**UNITED STATES of America, Appellee,**

v.

**Samuel NMN WOODARD, Jr., a/k/a Joe Siefus, Appellant.**

No. 81–1705.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 16, 1981.

Decided Feb. 22, 1982.

Robert A. Brunig, argued, O'Connor & Hannan, Minneapolis, Minn., for appellant.

James M. Rosenbaum, U. S. Atty., Janice M. Symchych, Asst. U. S. Atty., D. Minn., argued, Minneapolis, Minn., Dwight Pringle, Legal Intern, for appellee.

Before LAY, Chief Judge, and HENLEY and ARNOLD, Circuit Judges.

HENLEY, Circuit Judge.

Defendant appeals his conviction for bank robbery and assaulting bank employees with a dangerous weapon in violation of 18 U.S.C. § 2113(a) and (d), and 18 U.S.C. § 2. We affirm the judgment of the district court.[1]

On July 21, 1980, at about 1:45 p. m., three masked black males robbed the Midwest Federal Savings and Loan Association office on Arcade Street in St. Paul, Minnesota. One of the men wore a denim jumpsuit and a maroon ski mask. After the robbers left, one of the tellers ran to the door and saw the men get into a silver Ford, driven by a fourth man, and having license number BVM 667. Police Officer Schaub, who was driving near the savings and loan, heard a police broadcast at about 1:53 p. m., and saw the silver Ford moments later. He followed the car to the Chalet Village Apartments, where he saw three men run from the vehicle into a densely wooded area. The fourth man, Anthony Webb, hid between two cars in the parking lot and managed to get into the apartment complex unnoticed, where he obtained a change of clothes and talked to several people including Marvin Smith.

Meanwhile, officers searched the wooded area, where they discovered a maroon ski mask like the one allegedly worn by defendant. They also found one of the robbers, Joseph Archie, who was hiding in some thick brush, but were unable to locate the other two robbers who had run into the woods.

After the police left, Marvin Smith and two others went into the wooded area where, according to Smith's testimony, they found a black male in a denim jumpsuit which he discarded and which was later found by FBI Agent Houck in the area indicated by Smith. Smith further testified that he and his companions talked for several minutes with the man, who then left in a gold Thunderbird which was identified as defendant's car. At a photo display, and later in a suppression hearing, and again at trial, Smith identified defendant as the man he saw in the woods. In addition, FBI agents testified that at about 3:00 p. m. on the day of the robbery, defendant's car was listed among the cars in the apartment parking lot, that it was missing at a subsequent check around 5:00 p. m., and that defendant was observed driving his car at about 5:40 p. m.

On September 3, 1980, Webb, in the course of planning another robbery with an undercover FBI agent, admitted participating in the July 21 robbery and also implicated a man named Joe Siefus, whom he later identified as defendant. On January 6, 1981, defendant was arrested in Omaha on an unrelated drug charge and was turned over to the FBI. After receiving and waiving his *Miranda* rights, defendant admitted knowing Webb, Archie, and Alan Todd, the fourth suspect in the robbery. He also acknowledged that he was known as Joe Siefus, but he denied participation in the robbery.

Following a jury trial in February, 1981, defendant was found guilty and sentenced to fifteen years. His motion for new trial was denied.

One of defendant's primary contentions concerns the trial court's failure to strike or to exclude testimony introduced by the government to rebut defendant's alibi witnesses. Pursuant to Fed.R.Crim.P. 12.1, defendant served notice of two alibi witnesses—Carl Benson, who testified that he had seen defendant in his apartment building around noon on July 21, 1980, and Albert Willis, who testified that while in Minneapolis on business he had visited with defend-

1. The Honorable Harry H. MacLaughlin, United States District Judge, District of Minnesota.

ant sometime after lunch on July 21. The government then called without objection FBI Agent Richard Donovan, who testified that during an interview with Donovan, Benson could not remember whether he saw defendant on July 21. The government also called, over defendant's objection, FBI Agent George Parks, who testified that although Willis did remember during an interview with Parks that he had seen defendant on July 21, he could not specify the time of day, but could only be sure that the visit occurred sometime between 1:00 p. m. when he left his hotel and about 9:00 p. m. when he left the city.

In addition to requiring defendant to serve notice of his alibi witnesses, Rule 12.1 requires the government to serve written notice upon defendant "stating the names and addresses of witnesses upon whom the government intends to rely ... to rebut testimony of any of the defendant's alibi witnesses." The rule further provides that if either party fails to comply with the notice requirement, "the court may exclude the testimony of any undisclosed witness," or the court may grant an exception "[f]or good cause shown." In denying defendant's motion for new trial, the district court acknowledged that the government had violated the rule by failing to disclose the names of Donovan and Parks, but justified the admission of Parks' testimony as a "good cause" exception. Although Donovan's testimony was admitted without objection, the court noted that Donovan's testimony would also have qualified for the exception.

■ To determine whether good cause had been shown for the admission of the rebuttal testimony, the court considered the factors set forth in *United States v. Myers,* 550 F.2d 1036 (5th Cir. 1977), *cert. denied,* 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978): (1) prejudice to defendant, (2) the reason for nondisclosure, (3) mitigation of the harm by subsequent events, (4) other evidence of defendant's guilt, and (5) other relevant factors. *Id.* at 1043. *See McClendon v. United States,* 587 F.2d 384, 388–89 (8th Cir. 1978), *cert. denied,* 440 U.S. 983, 99 S.Ct. 1793, 60 L.Ed.2d 244 (1979). In addressing defendant's motion for new trial,

the district court noted that defense counsel did not ask for a continuance; that the agents' testimony was largely cumulative since both of defendant's alibi witnesses admitted on cross-examination that they could not remember when they saw defendant; and that evidence indicated that defense counsel knew that at least one of the alibi witnesses had been interviewed by the FBI, thereby precluding the possibility of unfair surprise which the rule seeks to prevent. After finding that defendant had suffered little or no prejudice and that the other *Myers* factors either were neutral or weighed against defendant, the district court concluded that the rebuttal evidence was not improperly admitted.

After careful review and consideration, we cannot say the trial judge abused his discretion in admitting the testimony of Donovan and Parks. Defendant argues that he was prejudiced because the government's failure to comply with the notification requirement prevented a tactical evaluation of calling Benson and Willis as alibi witnesses. However, as the district court found, the prejudice, if any, to defendant was slight since Benson admitted on cross-examination that he could not remember the date he saw and talked with defendant and Willis could not specify, either on direct or cross-examination, what time of day he visited Woodard. Furthermore, as the district court noted, defense counsel knew that Willis had been interviewed by the FBI, and it appears that he was able to thoroughly cross-examine both Donovan and Parks. *See McClendon v. United States, supra.*

In addition, the other evidence of defendant's guilt was strong, in contrast to *Myers,* in which defendant's alibi was a central issue. Woodard was identified as a robber by Webb and was identified by Smith as the man he saw in the woods after the robbery wearing a denim jumpsuit. Evidence was introduced showing that defendant's car was in the Chalet apartment parking lot shortly after the robbery but was missing at 5:00, and defendant was seen driving his car about 5:40. Thus, although we think the better procedure would have been for the government to identify Donovan and

Parks as possible alibi rebuttal witnesses, we conclude that it was not an abuse of discretion to admit their testimony.

 Another of defendant's contentions is that the trial court erred in refusing defense counsel's motion to withdraw. The motion, if made, was made after defense counsel, Mr. Brunig, called Archie in anticipation of Archie's testimony that he had not seen defendant on July 21, 1980. However, Archie, on advice of counsel, took the fifth amendment in response to all questions concerning his activities on that day.

We note that it is not clear from the record that a motion to withdraw was made. Nor does it appear that defense counsel moved immediately for a continuance or a mistrial. During an in chambers discussion, Mr. Brunig expressed his belief that he should be called as a witness due to Archie's unexpected refusal to testify. He then referred to the rule requiring an attorney to withdraw in most instances before being called as a witness, and stated, "I don't think I ought to be put in the position of determining whether or not substantial injustice would be done by my withdrawing at this point." The court did not specifically address the question of withdrawal but rather focused on the propriety of allowing counsel to testify and concluded that refusal to call Mr. Brunig would be "unfair, unjust and a violation of [its] sense of justice." Defendant now argues that the failure of the trial court to allow Mr. Brunig to withdraw as mandated by the Model Code of Professional Responsibility DR 5–102(A) prejudiced him by placing counsel's credibility in issue. Assuming Mr. Brunig's mention of the rule requiring attorneys to withdraw if they are to be called as a witness constitutes a motion to withdraw, we find that the district court's implied denial was not an abuse of discretion. The possibility of counsel testifying did not become apparent until near the end of a somewhat long and complicated trial. The prejudice to defendant, if any, resulting from his attorney's testifying on his behalf was outweighed by the necessity of calling Mr. Brunig and by the hardship that would have followed if Mr. Brunig had been required to withdraw so late in the proceedings.

We have carefully considered defendant's remaining contentions—concerning his custodial statements, Webb's alleged recantation, Smith's identifications, defendant's request for a jury view, Webb's prior consistent statement, evidence of defendant's other crimes, and defendant's requested instructions—and find them to be without merit.

The judgment of the district court is affirmed.