# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-1870

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Darwin Michael Bissonette, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: December 18, 1998
Filed: January 8, 1999

_____

Before MURPHY, JOHN R. GIBSON, and MAGILL, Circuit Judges.

_____

MURPHY, Circuit Judge.

Darwin Michael Bissonette appeals from his conviction for distributing marijuana in violation of 21 U.S.C. § 841(a)(1). He claims that the government's untimely disclosure of witness Robert Thunder Horse should have led to the exclusion of his testimony and that the district court[1] also erred by permitting Thunder Horse to identify him at trial. We affirm.

_____

[1]The Honorable Richard H. Battey, United States District Court for the District of South Dakota.

The evidence at trial indicated that Bissonette had sold 5.44 grams of marijuana at his home to Thunder Horse, who was acting in an undercover capacity. Details of the purchase were recorded immediately after the transaction in Thunder Horse's own statement and in summary reports of debriefing officers. The transaction took place on February 22, 1997, and it was part of an extended sting operation by the Bureau of Indian Affairs and the Oglala Sioux Tribe Department of Public Safety. During the operation Thunder Horse made approximately 15 controlled buys and between 50 and 60 contacts which did not result in controlled purchases. In the course of debriefing Thunder Horse, investigators from the tribal police and the Bureau of Indian Affairs showed him a photograph of Bissonette and asked him if he could identify the individual pictured. He replied affirmatively and said that it was Mike Bissonette, one of the people from whom he had made a controlled buy. Thunder Horse's trial testimony indicated that he had also seen Bissonette on another occasion four years earlier when he had gone to his house with a friend.

Bissonette gave written notice on September 24, 1997 of his intention to offer an alibi defense at trial. This obligated the government to provide the names and addresses of any alibi rebuttal witnesses within ten days, and "in no event less than ten days before trial." Fed. R. Crim. P. 12(b). The trial was scheduled to start on November 4, and on October 22 Bissonette moved to exclude the testimony of witnesses not disclosed pursuant to Rule 12.1. The district court continued the trial date to November 18, and on October 31 the government named Thunder Horse as an alibi rebuttal witness. The government had previously given Bissonette copies of Thunder Horse's statement and his debriefing summaries, but these documents identified the declarant only by confidential informant number. The court subsequently denied the Rule 12.1 motion to exclude testimony.

At trial, Thunder Horse identified Bissonette as the person who had sold him marijuana on February 22, 1997. He was the only witness who testified to being present at the sale. The jury found Bissonette guilty, and the trial court sentenced him to one year incarceration.

Bissonette claims on appeal that the trial court committed reversible error by admitting Thunder Horse's testimony when the government had not identified him within ten days of his notice of alibi defense and less than ten days before the original trial date. The standard of review for this issue is whether the district court abused its discretion in admitting the evidence. See United States v. Woodard, 671 F.2d 1097, 1099 (8th Cir. 1982).

The alibi notice rule requires the government to provide notice of its alibi rebuttal witnesses within a set time period, but leaves it to the trial court to decide whether any violation mandates exclusion of testimony. Fed. R. Crim P. 12.1(b), (d), (e) (court "may" exclude the testimony of any undisclosed witness and grant exceptions for good cause). Factors to consider include prejudice to the defendant, the reason for nondisclosure, mitigation of harm by subsequent events, and other evidence of the defendant's guilt. See United States v. Woodard, 671 F.2d 1097, 1099 (8th Cir. 1982); United States v. Myers, 550 F. 2d 1036, 1043 (5th Cir. 1977).

The district court did not abuse its discretion by denying the motion to exclude Thunder Horse's testimony. Although Rule 12.1 gives the court the power to exclude evidence when it is violated, it does not require exclusion. Bissonette suffered no prejudice as a result of the government's late disclosure. The trial was continued, and the defense had more than ten days to consider the disclosure of Thunder Horse as an alibi rebuttal witness. The defense previously knew the substance of Thunder Horse's testimony from the statements and summary reports provided Bissonette, and counsel conducted a thorough cross examination on his behalf. Bissonette also failed to request a further continuance, indicating that he did not perceive the need for additional time to prepare. See McClendon v. United States, 587 F.2d 384, 389 (8th Cir. 1978). See also United States v. Quesada-Bonilla, 952 F.2d 597, 603 (1st Cir. 1991). Neither the text nor the policy behind the rule required the court to exclude the evidence. See Quesada-Bonilla, 952 F.2d at 602-03; McClendon, 587 F.2d at 388-89.

Bissonette also claims that the court committed reversible error by permitting Thunder Horse to make an in court identification at trial. Bissonette says that the pretrial identification procedure was impermissibly suggestive because Thunder Horse was only shown one photograph and that he therefore should not have been permitted to identify Bissonette at trial.

There is no evidence that there was anything in the debriefing interview to prompt Thunder Horse to connect the photo he was shown to a particular individual or incident. Thunder Horse had been involved in numerous controlled buys, but he named Bissonette and reported on the drug transaction with him as soon as he saw the photograph. This situation is not like procedures where there is a suggested connection between displayed evidence and a particular crime, as when a witness is asked whether this specific individual was responsible for robbing the bank. See United States v. Henderson, 719 F.2d 934, 937 (8th Cir. 1983). Although there was an almost nine month gap between Thunder Horse's last encounter with Bissonette and the photo identification, Thunder Horse had had ample opportunity to observe Bissonette during the course of the face to face transaction at Bissonette's house and on his previous visit. Because he was part of an undercover sting operation at the time of the transaction, Thunder Horse knew he needed to observe the seller carefully. He had previously been trained as a police officer and specifically in identification procedures.

The totality of circumstances here indicates that the single photo identification was not impermissibly suggestive or likely to result in "irreparable misidentification." Brodnicki v. City of Omaha, 75 F.3d 1261, 1265 (8th Cir. 1996); see also Pratt v. Parratt, 615 F.2d 486, 488 (8th Cir. 1980). There was ample reason for the trial court to find Thunder Horse capable of making a reliable identification. See Neil v. Biggers, 409 U.S. 188, 199-200 (1972); Brodnicki, 75 F.3d at 1265. The trial court therefore did not abuse its discretion in allowing Thunder Horse to identify Bissonette at trial. The court also did not err by refusing to grant a separate pretrial suppression hearing, and defense counsel was able to protect Bissonette's rights by attacking the reliability

4

and accuracy of the identification through cross examination.  See <u>Watkins v. Sowders</u>, 449 U.S. 341, 349 (1981).

Appellant has not shown reversible error or established a right to a new trial, and we affirm the judgment of the district court.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.