**UNITED STATES of America,**

v.

**Jose R. CASTRO, Defendant.**

**No. CR.A. 5:00CR30053.**

United States District Court,
W.D. Virginia,
Harrisonburg Division.

Feb. 6, 2003.

Anthony Franklin Anderson, Roanoke, VA, Cheryl V. Higgins, St. John, Bowling & Lawrence, Charlottesville, VA, John S. Hart, Jr., Harrisonburg, VA, David S. Mejia, Kentucky Dept. of Public Advocacy, Frankfort, KY, for Jose R. Castro.

Walter Franklin Green, IV, Harrisonburg, VA, Richard G. Morgan, Jr., Harrisonburg, VA, for Jorge Enrique Sandoval.

Bruce A. Pagel, U.S. Attorney's Office, Charlottesville, VA, for U.S.

*MEMORANDUM OPINION*

MICHAEL, Senior District Judge.

Currently before the court is the defendant's Motion to Suppress Identification filed on December 28, 2001. Having considered the argument of counsel, the evidence presented at the suppression hearing held on February 5, 2002, and having reviewed the motion and opposition thereto, and for the reasons hereinafter set forth, the defendant's motion shall be

GRANTED IN PART and DENIED IN PART as more fully explained below.

## I. Background

In September 1999, four individuals were arrested in the Harrisonburg, VA area with multiple pounds of methamphetamine. Two of those individuals, Jorge Sandoval and Crystal Sains, a.k.a. Aracely Arteaga–Mendiola, were identified as being from Chicago, Illinois. (Mot. to Suppress Identification at 1–2.) During interviews with federal and state agents in the months after the arrest, Sandoval and Sains identified the source of supply for the methamphetamine as a man from Chicago known as "La Roca," [1] or alternatively, as "Roque." *Id.* at 2–3. Sandoval provided to the government telephone numbers and other identifying information about his sources of supply and his customers. *Id.* at 3. Approximately ten months after the arrest of the four individuals, Sergeant Witting of the Rockingham County Sheriff's Office showed a single photograph of the defendant to Sandoval and Sains. Sergeant Wittig's only inquiry when he showed the photograph was whether the individual depicted was involved with narcotics. *Id.* Sandoval unequivocally identified the person in the photograph as "Roque." *Id.* Sains, on the other hand, stated that although the photograph could be of Roque, she was unsure. *Id.* Both Sains and Sandoval were incarcerated and cooperating with the government at the time they made the identification. On August 17, 2000, a grand jury sitting in Charlottesville, VA handed down a one count indictment charging the defendant, Jose R. Castro, and several co-defendants with conspiracy to distribute or possess with the intent to distribute 500 grams or more of methamphetamine, and five kilograms or more of cocaine.[2] *See* 18 U.S.C. §§ 841, 846 (West 1994 & Supp.2002).

Defense counsel argues that the single photograph identification of the defendant was impermissibly suggestive and creates a substantial likelihood of irreparable misidentification at trial. *See Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The defendant asserts that absent the suggestive single-photo identification, there is no independent basis upon which Sains and Sandoval can identify the defendant as Sandoval's supplier of methamphetamine. Accordingly, the defendant moves to suppress the pretrial and any in-court identification of the defendant by Jorge Sandoval and Crystal Sains.

## II. Discussion

■ The defendant bears the burden of proof in challenging the admissibility of identification testimony. *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). A pretrial identification, and a subsequent in-court identification, is suppressed only if "the [pretrial] photographic identification procedure is so impermissibly suggestive as to give rise to the very substantial likelihood of misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Courts employ a two-step analysis in determining the admissibility of identification testimony. First, the court decides whether the initial identification is impermissibly suggestive. *United States v. Johnson,* 114 F.3d 435, 441 (4th Cir. 1997). Second, even if the court deter-

---

1. "La Roca" means "the rock" in English.

2. Two years later, on August 16, 2002, another Charlottesville, VA grand jury handed down a superceding indictment further charging the defendant with various obstruction of justice charges.

mines that the identification procedure was impermissibly suggestive, the testimony is admissible if the identification is reliable based on the totality of the circumstances. *Id.* To assess the reliability of the identification, courts consider five factors: 1) the witness's opportunity to view the perpetrator at the time of the offense; 2) the witness's degree of attention at the time of the offense; 3) the accuracy of the witness's prior description; 4) the level of certainty when identifying the defendant as the perpetrator; and 5) the time elapsed between the crime and the identification. *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Johnson,* 114 F.3d at 441.

### A. Sandoval's Identification

To determine the admissibility of Sandoval's identification of the defendant, it is necessary to examine more closely the facts as they were presented in the pleadings and at the suppression hearing.

After his arrest, Jorge Sandoval entered into a proffer agreement with the government. Sandoval admitted that he was responsible for bringing multiple pounds of cocaine and methamphetamine from Chicago, Illinois to the Harrisonburg, VA area. Sergeant Witting testified that Sandoval identified his main supplier of methamphetamine as "Roque." [3] Sandoval told government agents that he has known Roque since approximately age fourteen, but had not worked for him until about 1993. (J. Ex. 1 at ¶ 2; [4] Suppression Hr'g Tr. at

31, 35.) Sandoval's proffers establish a long-standing business relationship with Roque. Sandoval distributed substantial quantities of cocaine and methamphetamine for Roque in both the Chicago area, and in the Western District of Virginia. (J. Ex. 1 at ¶¶ 2–4, 10, 17, 18.) Specifically, Sandoval stated that all of the methamphetamine and cocaine he was responsible for bringing into the Harrisonburg area was supplied by Roque. (J. Ex. 1 at ¶ 23.) Sandoval also provided to the government Roque's phone numbers and address in Chicago. (J. Ex. 2,[5] Suppression Hr'g Tr. at 31, 46.) Sandoval also provided a general physical description of Roque, including his age and build, and some general information about Roque's drug operation and sources of supply. (J. Ex.1 at ¶¶ 2, 49.) Finally, Sandoval related his dealings with other suppliers and customers, and provided telephone numbers and identified through photographs many of the "main" players in the narcotics trade in Harrisonburg. (J. Ex. 1 at ¶¶ 26–48.)

Based on the information provided by Sandoval and Sains, *see infra* Part II.B., Sgt. Wittig and DEA Agent Rosel traveled to Chicago in July of 2000 in an effort to identify "Roque." The officers conducted surveillance of the house located at the address provided by Sandoval. They witnessed a male exit the house and drive away in a vehicle that was parked in front of the residence. (J. Ex. 2.) A Chicago DEA Agent that was assisting Sgt. Witting and Agent Rosel initiated a traffic stop and identified the individual as Jose

---

**3.** During the suppression hearing, defense counsel made much of the fact that in the various reports of the proffer sessions with Jorge Sandoval, Sandoval's supplier is identified as Roque Marquez. Sergeant Witting, however, testified that he remembers Sandoval referring to his supplier only as "Roque," and that because he did not author the reports, he is not aware of the source for the "Marquez" reference. (Suppression Hr'g Tr.

at 8, 10, 61). Because Sgt. Wittig's testimony is uncontroverted, the court accepts it as true.

**4.** Joint Exhibit # 1 is a DEA–6, a summary of proffer sessions with Jorge Sandoval on October 6 and 21, 1999.

**5.** Joint Exhibit # 2 is Sgt. Wittig's August 4, 2000 affidavit signed before the Hon. B. Waugh Crigler, in support of the arrest warrant for the defendant.

R. Castro. *Id.* A DMV photograph was requested and arrived in Harrisonburg, VA about a week later. *Id.*

On July 25, 2000, Sgt. Witting visited Jorge Sandoval at the Rockingham County Jail with the DMV photograph of the defendant. At the suppression hearing, Sgt. Witting related how he approached Sandoval about the defendant's photograph:

> What I did with Mr. Sandoval was to pull him from the pod. We had not seen Mr. Sandoval in probably over a month. I proceeded to talk to him about insignificant things of the investigation, none of which were related to Mr. Roque. I had the picture laying face down on the table. At some time during this incidental conversation about other aspects of the case, I turned the picture over and pointed to it and I said, do you recognize this to be anybody involved in anything to do with this.

> .     .     .     .     .

> Q [Defense attorney]. You asked him if this individual had any involvement with narcotics, didn't you?
>
> A: I asked him does he [man in the photograph] have any involvement in this case. If the word narcotics was used, it may have been used, yes, sir.

(Suppression Hr'g Tr. at 21.) Sergeant Wittig emphatically denied that he ever suggested or asked whether the photograph was of Roque, or that he was even talking about Roque when he showed the photograph to Sandoval. *Id.* at 36. Once Sandoval saw the photograph, Sgt. Witting testified that "[i]t was as if a light bulb had turned. He [Sandoval] pointed to it and said, that's Roque." *Id.* at 22. Significantly, Sandoval never hesitated in identifying the photograph as being that of Roque. *Id.* at 36; (J. Ex. 2.)

The defendant argues that Sandoval's identification of the defendant was unduly suggestive and unreliable. Defendant relies upon case-law to support his position that a single-photograph identification is impermissibly suggestive. *See Manson v. Brathwaite*, 432 U.S. 98, 116, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) (stating that "identifications arising from single-photograph displays may be viewed in general with suspicion"); *United States v. Johnson*, 114 F.3d 435, 442 (4th Cir.1997) (concluding that the "single photograph display [in that case] was unduly suggestive"). The defendant then moves on to argue that the identification, in the totality of the circumstances, was not reliable. In particular, the defendant stresses that Sandoval was cooperating with the government, that he was incarcerated at the time he made the identification, that he never identified his supplier as Jose R. Castro, but only as Roque, that he had not provided a detailed physical description of Roque, and that ten months had elapsed between Sandoval's arrest and the identification. (Def.'s Mem. in Supp. of Mot. to Suppress Identification at 3–4, 8.)

### 1. Impermissibly Suggestive

■ Although the defendant addresses the first prong of the inquiry in a cursory manner, the evidence currently before the court demonstrates that Sandoval's single photograph identification of the defendant was not impermissibly suggestive. First, although courts do mistrust such identifications, case law does not firmly establish, at least not to the extent the defendant argues, that single-photograph identifications are always impermissibly suggestive. In fact, a great majority of courts avoid directly deciding whether single-photograph identification is impermissibly suggestive, and instead, determine the admissibility of identification evidence on the second prong of the inquiry. *See Holdren v. Legursky*, 16 F.3d 57, 61 (4th Cir.1994) ("However, without determining whether Holdren has met the threshold requirement of suggestiveness we may proceed directly to the reliability of the identifica-

tion."); *United States v. Washington,* 12 F.3d 1128, 1134 (D.C.Cir.1994) ("First, we determine whether the showing of a single photograph to Officers Iuzzolino and Jewell was impermissibly suggestive. Assuming that it was, we then examine whether, under the totality of the circumstances, the identification was sufficiently reliable to preclude a substantial likelihood of misidentification.") (internal quotations omitted); *United States v. Wilkins,* 2000 WL 1345935, at * 2 (4th Cir.2000) ("Even assuming, without deciding, that showing a single photograph is impermissibly suggestive, the identification at issue here was reliable."). Second, the concern that a single-photograph identification is unduly suggestive and may result in a misidentification stems from the fact that usually, what is at stake is an identification of a complete stranger whom the witness encountered "under circumstances of emergency or emotional stress." *Brathwaite,* 432 U.S. at 112, 97 S.Ct. 2243 (police officer identifying a drug-dealer he purchased narcotics from during an undercover operation);*Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) (victim's identification of her rapist seven months after the assault at a one-man, stationhouse showup);*Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) (one man showup of a murder defendant in the hospital room of the victim's wife who was also wounded in the assault).

The evidence presented at the suppression hearing establishes that the single-photograph identification of the defendant was not impermissibly suggestive. Noth-

ing about the photograph itself, and nothing about the way in which the photograph was presented to Sandoval suggested that Sgt. Wittig sought an identification of Roque. Sandoval identified the defendant's photograph during and "incidental conversation about other aspects of the case" with Sgt. Witting. (Suppression Hr'g Tr. at 36) ("We were talking about ins and outs of the investigation, totally unrelated to Roque.") The uncontroverted testimony was that Sgt. Witting did not in any way suggest or ask Mr. Sandoval whether the photograph was of Roque.[6] The evidence shows that Sgt. Wittig only inquired as to whether the man in the photograph was involved with narcotics, not whether he was Roque. Unlike the cases discussed above, the instant identification did not come at a time when the eyewitness was expected to, or was attempting to, identify any particular person. Additionally, nothing in the record supports defense counsel's allegation that because at the time of the identification Sandoval was cooperating with the government and had been incarcerated for a significant period of time, he "would have identified the photograph of anyone" as being Roque. (Mot. to Suppress Identification at 4.) Significantly, evidence at the suppression hearing showed that when Sandoval previously had been shown a photograph of someone identified as Luis Marquez or Roque Marques, Sandoval "immediately stated that that wasn't the right man."[7] (Suppression Hr'g Tr. at 69.) Finally, unlike the aforementioned cases, Sandoval was identifying what amounts to a business associate, and

---

**6.** During the suppression hearing, Sgt. Witting provided a plausible and reasonable explanation as to why the single-photograph identification was in fact less suggestive than a photo array. The photograph of the defendant was a black and white DMV photograph. Sergeant Wittig, therefore decided that "That picture would have stood out different from the pictures in that album as being a different

size and I thought it would have drawn attention to the one picture." (Suppression Hr'g Tr. at 20; 32–33.)

**7.** Furthermore, Sandoval also had looked through a book with photographs in an attempt to identify Roque. (Suppression Hr'g Tr. at 14.)

not an attacker or a stranger with whom he had only limited interaction during an emotionally stressful event.

The Fourth Circuit's decision in *United States v. Johnson*, 114 F.3d 435 (4th Cir. 1997), does not foreclose the court's current conclusion. *Johnson* involved a thwarted bank-robbery attempt by two individuals, Johnson and Campbell. While Campbell was arrested on the scene, Johnson was able to escape, only to be arrested for driving with a revoked license a few days after the robbery. *Id.* at 437. During Campbell's appearance in federal court, Campbell expressed a desire to assist the government. The investigating agent showed Campbell a single photograph of Johnson, and Campbell identified Johnson as the man with whom he had done the bank-robbery. *Id.* The Fourth Circuit held that the single photograph identification was impermissibly suggestive given the circumstances, but nevertheless found the identification reliable.

*Johnson*, however, is factually different from the instant case. Although the facts of the case are not particularly clear, there is an implication that Johnson and Campbell did not know each other well, or at least, did not have a long-standing relationship as did Sandoval and Castro. *Johnson*, 114 F.3d at 438 (stating that the two defendants met the night before to plan the robbery, and that the cooperating defendant only knew his co-conspirator by nickname, and was able to provide a general physical description). Furthermore, when Campbell was confronted with Johnson's photograph, he was "in a federal courtroom surrounded by law enforcement personnel ... [and was] facing substantial time." *Id.* at 442. The only way that Campbell could assist the government was to identify his co-conspirator. Thus, the pressure to identify the person in the photograph as the other bank-robber was considerable. In contrast, at the time of the identification at issue, Sandoval had been incarcerated for an extended period of time, and therefore, his surroundings did not create the intimidating atmosphere present in *Johnson*. Additionally, Sandoval already was providing substantial assistance to the government by identifying individuals involved in the narcotics trade in the Harrisonburg area. (J. Ex. 1 at ¶¶ 26–48.) Furthermore, by providing Roque's telephone number and address in Chicago, Sandoval had already given the government several methods of locating Roque. Finally, and perhaps most importantly, the suggestiveness of the identification is significantly reduced by the fact that Sandoval identified the defendant during a conversation about general and incidental matters in the case, and not while being specifically questioned about Roque. *See United States v. Bissonette*, 164 F.3d 1143, 1145 (8th Cir.1999) ("This situation is not like procedures where there is a suggested connection between displayed evidence and a particular crime ....")

For all of these reasons, the court finds that the instant identification was not impermissibly suggestive.

**2. Reliability of the Identification**

■ Even if the instant single-photograph identification was impermissibly suggestive, the application of the reliability factors necessarily shows that, under the totality of the circumstances, Sandoval's identification was reliable. First, Sandoval had ample opportunity to view the perpetrator at the time of the crime. The evidence currently before the court shows that Sandoval knew the defendant from his teenage years, and their "business" relationship was substantial and continued for a number of years.[8] The nature of the

8. Defense counsel makes much of the fact    that Sandoval only identified his supplier by

relationship between Sandoval and the defendant also assures that the second reliability factor is satisfied.

■ The third reliability factor for the court to consider is the witness's prior description of the perpetrator. The evidence shows that Sandoval provided the government with a general physical description of the defendant. (J. Ex. 2); (Suppression Hr'g Tr. at 58) (comment by Agent Rose, while doing surveillance of defendant's house in Chicago, that man, later identified as the defendant, walking out of the house matches the description of Roque). The fact that Sandoval only provided a general description of the defendant, however, is not uncommon considering the circumstances of the case. Sandoval had given the government the defendant's telephone numbers and address in Chicago. Where the witness and the person being identified have a long-term relationship, as is currently the case, the witness's prior description is less significant in judging the reliability of an identification. *See United States v. Concepcion*, 983 F.2d 369, 377–78 (2nd Cir. 1992) ("A good or poor rating with respect to any one of these [reliability] factors will generally not be dispositive. For example, the absence of a prior description by the witness does not necessarily render his or her subsequent identification suspect."). This reliability factor takes on a greater significance in a case where a crime victim is identifying a stranger seen only for a moment during a stressful situation.

The fourth reliability factor, the witness's level of certainty when identifying the defendant, is clearly satisfied in the instant case. Sergeant Wittig's unequivocal testimony was that Sandoval never hesitated in his assertion that the photograph is of Roque. In fact, Sgt. Witting characterized Sandoval's reaction at seeing the photograph as a light bulb turning on.[9] (Suppression Hr'g Tr. at 22.) Finally, although ten months elapsed between Sandoval's arrest and the identification, the length of time is irrelevant considering the duration and nature of the relationship between the defendant and Sandoval. It is unlikely that Sandoval's memory of a man whom he has known since his teenage years would fade after only ten months of incarceration. Thus, under the totality of the circumstances, Sandoval's identification of the defendant was reliable.

For the aforementioned reasons, the defendant's motion to suppress is DENIED in so far as it pertains to Jorge Sandoval.

## B. Crystal Sains

■ With respect to Crystal Sains, it is unnecessary for the court to conduct the two-step analysis for determining the admissibility of identification testimony because Sains never made a pretrial identification of the defendant. A brief factual summary will clarify the matter.

Crystal Sains served as a courier for Jorge Sandoval, bringing methamphetamine from Chicago to the Harrisonburg area on at least two occasions. (J. Ex. 2.) During proffer sessions with the government after her arrest, Sains admitted that she knew about Sandoval's supplier and referred to him as "La Roca" or "Roque."

---

the name of "Roque" and never once gave the government the defendant's full name. However, in the drug trade, and perhaps the very nature of the business dictates it, it is not uncommon for individuals who have known each other for years to only know each other by a nickname.

9. Sandoval's unequivocal identification of Roque is particularly significant considering that the photograph was a black and white DMV photograph only depicting the defendant's head and shoulders. (Suppression Hr'g Tr. at 19.)

(J. Ex. 3 at ¶ 4; J. Ex. 4 at ¶ 3.) During the suppression hearing, there was testimony that Sains had met Roque twice, but that the one time that she would have seen his face, it would have been dark. (Suppression Hr'g Tr. at 50–51.)

Sergeant Witting implemented with Sains the identical identification approach taken with Jorge Sandoval. On July 28, 2000, Sgt. Wittig presented Sains with the defendant's photograph and asked her if she recognized the individual depicted as being involved in narcotics. He presented the photograph during incidental conversation about the investigation. (Suppression Hr'g Tr. at 27–28.) However, the response received was drastically different from Sandoval's reaction. Rather than a light bulb turning on, Sains could not recognize the individual in the photograph. (Suppression Hr'g Tr. at 28.) Although Sains indicated that she had seen the person before, she could not positively identify him or provide a name. *Id.* Sergeant Witting testified that after he suggestively asked whether the photograph could be of Roque, Sains stated that "yes, it would be, but yeah, it couldn't be too, I couldn't really say from the picture." *Id.*

Because Sains did not actually identify the defendant from the photograph, the defendant's motion to suppress pretrial identification evidence with respect to Crystal Sains is GRANTED. Furthermore, because there was no actual pretrial identification of the defendant, the court need not address whether the photograph shown to Sains was impermissibly suggestive and will give rise to a substantial likelihood of misidentification at trial. Accordingly, the government is not precluded from attempting to elicit from Sains an in-court identification of the defendant.[10]

### III. Conclusion

For the reasons stated above, the court shall deny in part, and grant in part the defendant's motion to suppress identification testimony. With respect to Jorge Sandoval, the government is permitted to introduce evidence regarding his pretrial identification of the defendant, and to elicit an in-court identification. Because Crystal Sains never positively identified the defendant prior to trial, the government may not introduce evidence of a pretrial identification of the defendant by Sains, but may, if it so chooses, seek an in-court identification.

An appropriate Order this day shall issue.

### *ORDER*

For the reasons stated in the accompanying memorandum opinion, it is this day

### ADJUDGED, ORDERED, AND DECREED

that the defendant's December 28, 2001 Motion to Suppress Identification shall be, and it hereby is, DENIED IN PART and GRANTED IN PART, as more fully explained in the court's memorandum opinion.

The Clerk of the Court hereby is directed to send a certified copy of this Order and the Memorandum Opinion to all counsel of record.

---

10. Whether or not Sains is able to identify the defendant in court is highly questionable given her statement to Sgt. Wittig that she is unsure whether seeing the person in the photograph will help her in identifying him. (Suppression Hr'g Tr. at 50–51.)